UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

YARITZA I. COLON-RAMOS, et al,

    Plaintiffs,

v.

CLINICA SANTA ROSA, INC., et al.,

    Defendants.

Civil No. 12-1222 (JAF)

**OPINION AND ORDER**

We must decide whether a covered medical provider violates the Emergency Medical Treatment and Active Labor Act ("EMTALA") when its medical personnel fail to diagnose a patient's potential emergency condition, but treats the symptoms identified and concludes that the patient has been stabilized.

**I.**

**Factual and Procedural History**

On June 23, 2010, Awilda Ramos-Ortiz visited the emergency room at Lafayette Hospital in Arroyo, Puerto Rico, complaining of body pain and fever. Lafayette performed several lab tests and eventually discharged Ramos-Ortiz. On June 25, 2010, Ramos-Ortiz returned to the Lafayette emergency room. After several hours, Ramos-Ortiz was again discharged—this time with a diagnosis of dengue-like symptoms.

On June 27, 2010, Ramos-Ortiz went to the emergency room at Santa Rosa Hospital in Guayama, Puerto Rico. Dr.Wilbert R. del-Valle-Rivera, a Santa Rosa emergency room doctor, examined Ramos-Ortiz and ordered several tests. Dr. del Valle noted that Ramos-Ortiz was reporting abdominal pain, headache, and general weakness. Dr. del Valle then diagnosed

Ramos-Ortiz as having dengue-like symptoms, including fever and mild dehydration; neither he, nor any other Santa Rosa physician or employee, diagnosed Ramos-Ortiz as suffering from an emergency medical condition. Dr. del Valle administered several medications and saline, to replenish Ramos-Ortiz's fluids. A second doctor, Dr. Luis Rivera-Pomales, approved Ramos-Ortiz for discharge.

Two days later, Ramos-Ortiz visited the emergency room at Hospital Episcopal San Lucas, where doctors diagnosed her with acute coronary syndrome, but failed to note her dengue-like symptoms. Ramos-Ortiz's condition deteriorated rapidly, and she died under the care of Hospital Episcopal San Lucas.

On March 28, 2012, Plaintiffs, Ramos-Ortiz's daughters, filed a complaint against defendants Hospital Santa Rosa; Drs. del Valle-Rivera and Rivera-Pomales, and their conjugal partnerships; SIMED Insurance; Médicos Hospitalistas Sur Este, CSP (MHSE); Medicare y Mucho Más Healthcare, Inc. (MMM), and Medical Management Services Organization, Inc. (MMO), alleging that defendants violated the provisions of EMTALA, 42 U.S.C. § 1395dd, and various Commonwealth laws. (Docket No. 1.) On May 25, 2012, Defendants MMO and MMM filed a motion to dismiss the complaint. (Docket No. 27.) Plaintiffs replied. (Docket No. 33.) On June 1, 2012, Hospital Santa Rosa filed a cross-claim against all defendants. (Docket No. 29.) On October 17, 2012, Plaintiffs filed an amended complaint. (Docket No. 69.) On November 28, 2012, MMM/MMO filed a motion to dismiss the amended complaint. (Docket No. 80.) We grant the motion to dismiss.

## II.

## Legal Standard

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. See Fed.R.Civ.P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of plaintiff. San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012) (citation omitted).

## III.

## Discussion

### A.   EMTALA Claims

Congress enacted EMTALA, commonly known as the "Patient Anti-Dumping Act," in response to the growing concern about the provision of adequate medical services to individuals, particularly the indigent and the uninsured, who seek care from hospital emergency rooms. Congress was concerned that hospitals were dumping patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients, or by transferring the patients to other hospitals before the patients' conditions stabilized.  See H.R.Rep. No. 241, 99th Cong., 1st Sess., Part I, at 27 (1985), reprinted in 1986 U.S.Code Cong. & Admin. News 579, 605 ("The Committee is greatly concerned about the increasing number of reports that hospital emergency rooms are refusing to treat patients with emergency conditions if the patient does not have medical insurance.").

"EMTALA does not apply to all healthcare facilities; it applies only to participating hospitals with emergency departments." Rodríguez v. American International Insurance Co., 402 F3d 45, 48 (1st Cir. 2005).  Under EMTALA, "hospital" means an institution which:

> (1) is primarily engaged in providing, by or under the supervision of physicians, to inpatients (A) diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured,

>       disabled, or sick persons, or (B) rehabilitation services for the
>       rehabilitation of injured, disabled, or sick persons;
>       (7) [and,] in the case of an institution in any State in which State
>       or applicable local law provides for the licensing of hospitals, (A)
>       is licensed pursuant to such law or (B) is approved, by the agency
>       of such State or locality responsible for licensing hospitals, as
>       meeting the standards for such licensing . . . .

42 U.S.C. §1395x(e)(1) and (2).

EMTALA does not create a cause of action for medical malpractice. Correa v. Hosp. San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995). "Congress deliberately left the establishment of malpractice liability to state law...." Id.; see also Loaisiga Cruz v. Hosp. San Juan Bautista, 681 F.Supp.2d 130, 135 n.2 (D.P.R. 2010) ("The Court notes that, even if Plaintiff were to allege that the diagnosis of a fractured vertebrae was incorrect, such a mis-diagnosis would not create a cause of action under EMTALA, but rather, would create a cause of action under the applicable state malpractice law.").

Instead, EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such a medical condition exists. del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 19 (1st Cir. 2002). EMTALA, then, is "'merely an entitlement to receive the same treatment that is accorded to others similarly situated.'" Kenyon v. Hosp. San Antonio, 2013 WL 210273 (D.P.R. January 17, 2013) (quoting Jones v. Wake County Hosp. Sys., Inc., 786 F.Supp. 538, 544 (E.D.N.C. 1991). "'[I]nadequate screening or screening that leads to an incorrect diagnosis" Kenyon, 2013 WL 210273 *5 (citation omitted) forms the basis of malpractice claims—not EMTALA claims. As such, while "a refusal to follow regular screening procedures in a particular instance contravenes the statute, ... faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the

Civil No. 12-1222 (JAF) -5-

statute." Correa, 69 F.3d at 1192-93. "The essence of [the duty to screen]" under EMTALA is not that screening be administered perfectly, but "that there be some screening procedure, and that it be administered even-handedly." Id.

The Plaintiffs concede that Ramos-Ortiz received an "adequate medical screening." (Docket No. 69 at 11.) But Plaintiffs allege that Ramos-Ortiz's stable condition at discharge was merely "a doctor's note in her medical chart" and "not a true and accurate medical finding." (Id. at 9.) This, however, does not constitute a claim under EMTALA. The duty to stabilize under EMTALA attaches after a hospital "determines that the individual has an emergency medical condition." 42 U.S.C. § 1395dd(b)(1). "Thus, the plain language of the statute dictates a standard requiring actual knowledge of the emergency medical condition by the hospital staff." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 883 (4th Cir. 1992); see also Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1259 (9th Cir. 1995) ("As the text of the statute clearly states, the hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition."); Brooks v. Maryland Gen. Hosp., Inc., 996 F.2d 708, 711 (4th Cir. 1993) ("EMTALA's role [is] imposing on a hospital's emergency room the duty to screen all patients as any paying patient would be screened and to stabilize any emergency condition *discovered.*" (emphasis added)); Alvarez v. Vera, 2006 WL 2847376 at *6 (D.P.R. Oct. 2, 2006) ("A hospital must have had actual knowledge of the individual's unstabilized emergency condition if an EMTALA claim is to succeed."). In other words, EMTALA "does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they *should have been aware.*" Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 145 (4th Cir. 1996) (emphasis added).

Plaintiffs acknowledge in their amended complaint that Ramos-Ortiz was admitted, examined, and released on two separate visits to a different hospital facility only days before.

(Docket No. 69 at 5.)  Both hospitals treated her for dengue-like symptoms and released her, without determining that Ramos-Ortiz had any emergency condition.  At the very least, these facts indicate that Hospital Santa Rosa did not know at the outset that Ramos-Ortiz had an ongoing or potential emergency condition.  The fact that Clínica Santa Rosa also treated and released Ramos-Ortiz without uncovering any underlying emergency condition does not make an EMTALA claim; the clinic may have committed malpractice by failing to uncover an emergency condition, but such a failure to *diagnose* does not violate EMTALA.  The clinic performed adequate screening, by Plaintiffs' own admission, and released Ramos-Ortiz in a stable condition, and that is all EMTALA requires.  Plaintiffs have not alleged that the clinic failed to stabilize an emergency condition because the clinic did not find any emergency condition at all.

Plaintiffs argue that Ramos-Ortiz's discharge "without appropriate stabilization and no definitive care for her potentially lethal medical condition" (Id. at 11) violated EMTALA.  But even if that allegation is true, there would only be an EMTALA violation if the clinic had discovered that Ramos-Ortiz suffered from an emergency medical condition.  Here, Plaintiffs admit that the clinic screened and treated Ramos-Ortiz for the illness they diagnosed her to have.  Therefore, with respect to Ramos-Ortiz's visit to Clínica Santa Rosa on June 27, 2010, Plaintiffs have failed to allege facts sufficient to establish a claim under EMTALA.

**B.     Claims Against SIMED, MHSE, MMO, and MSO**

Plaintiffs concede in their complaint that neither SIMED, MMM nor MSO are hospitals under the language of EMTALA.  (Docket No. 69 at 4.)  There is no authority for the Plaintiffs' position that § 1395dd applies to insurance companies, HMO's, or similar health care plan providers.  Based on legislative intent and the plain wording of § 1395dd, we conclude that no cause of action exists against SIMED, MMO, and MSO for violations of § 1395dd.  The lack of

Civil No. 12-1222 (JAF)                                                                                               -7-

this predicate is fatal and no federal jurisdiction ensues. The claims against SIMED, MHSE, MMM, and MSO are **DISMISSED WITH PREJUDICE**.

### C. Claims Against Drs. Rivera-Pomales and del-Valle-Rivera, and their Conjugal Partnerships

Plaintiffs seek a private right of action against Drs. Rivera-Pomales and Wilbert del-Valle-Rivera (and their conjugal partnerships) under EMTALA. It is generally accepted that doctors are not liable under EMTALA. See del Carmen Guadalupe, 299 F.3d at 19 (1st Cir. 2002) ("While we have not decided the issue whether EMTALA provides a cause of action against individual physicians, all circuits that have done so have found that it does not."). Because EMTALA does not allow private suits against physicians or other individual third parties, Plaintiffs' claims against the individually-named defendants are dismissed. Lebron v. Ashford Presbyterian Cmty. Hosp., 995 F.Supp. 241, 244 (D.P.R. 1998) (citing Eberhardt, 62 F.3d 1253 (9th Cir.1995); Loaisiga v. Hospital San Juan Bautista, 681 F.Supp.2d 130 (D.P.R. 2010); King v. Ahrens, 16 F.3d 265 (8th Cir.1994); Delaney v. Cade, 986 F.2d 387 (10th Cir.1993); Baber v. Hosp. Corp. of America, 977 F.2d 872 (4th Cir.1992); Gatewood v. Washington Healthcare Corp., 933 F.2d 1037 (D.C.Cir.1991). Accordingly, we **DISMISS WITH PREJUDICE** Plaintiffs' federal claims against these individual Defendants, but **DISMISS WITHOUT PREJUDICE** any Commonwealth law claims, such as medical malpractice, which might be potentially implied.

### D. Puerto Rico Law Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed. See 28 USC §1367 (c)(3); Camelio v. Am. Fed'n, 137 F3d 666, 672 (1st Cir. 1998). If all federal claims are dismissed prior to trial, then the state law claims should be dismissed as well. Rodriguez v.

Civil No. 12-1222 (JAF) -8-

Doral Mortg. Corp., 57 F3d 1168, 177 (1st Cir. 1990). Accordingly, we dismiss Plaintiffs' additional Commonwealth claims under Articles 1802 and 1803 of the Puerto Rico Civil Code.

### IV.

### Conclusion

For the foregoing reasons, we hereby **GRANT** Defendants' motion to dismiss. (Docket No. 80.) As such, the cross-claim filed by Hospital Santa Rosa is **moot**. Plaintiffs' EMTALA claims against Hospital Santa Rosa, SIMED, MHSE, MMO, and MSO, Drs. Wilbert R. del-Valle-Rivera and Luis Rivera-Pomales, and their conjugal partnerships, are **DISMISSED WITH PREJUDICE,** while the claims under Puerto Rico law are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of April, 2013.

                                                s/José Antonio Fusté
                                                JOSE ANTONIO FUSTE
                                                Chief U.S. District Judge